UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KATHLEEN F. DENMAN,

    Plaintiff,                                                                             Case No. 04-70986

v.

CITY OF TAYLOR, GREGORY PITONIAK,                      Hon. John Corbett O'Meara
and JAMES RIDDLE, jointly and severally, as
well as individually and in their official capacities,

    Defendants.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

    Before the court is Defendants' motion for summary judgment, filed October 18, 2005. This matter has been fully briefed and the court heard oral argument on December 15, 2005. For the reasons set forth below, Defendants' motion is granted.

**BACKGROUND FACTS**

    Plaintiff Kathleen Denman was employed as Administrative Assistant to the Personnel Director for the City of Taylor until she was discharged on January 10, 2002. Plaintiff claims that she was terminated because she offered "a little support" to the mayor, Gregory Pitoniak, during the last election, "but did not offer nearly as much support as others did." Amended Complaint at ¶12.

    In her complaint, Plaintiff contends that Pitoniak's chief of staff, James Riddle, told her when her employment was terminated that she "did not do anything wrong." Id. at ¶16. Plaintiff further claims that she was replaced with an unqualified employee who had been an ardent supporter of Pitoniak in the election, Debra Kinde.

Defendants maintain that Plaintiff's employment was terminated, along with that of Personnel Director Don Wood, in a "restructuring" of the city personnel department in January 2002. According to Defendants, the mayor was unhappy with the level of customer service provided by the personnel department. Mayor Pitoniak decided to "clean house" by not renewing Wood's employment contract and by terminating Plaintiff's employment, as they were the only management employees in the department. Defs.' Ex. A, Pitoniak Dep. at 41-43. According to Defendants, Plaintiff was terminated because she had a reputation of being short, abrasive, and rude to employees, retirees, and job applicants.

The mayor created new management positions in the personnel department: Director of Human Resources and Deputy Director of Human Resources. Pitoniak appointed his chief of staff, James Riddle, to serve in the dual role as chief of staff and Director of Human Resources. Pitoniak appointed Debra Kinde as Deputy Director.

Mayor Pitoniak testified that he believed Plaintiff was an "active" supporter of his during the 2001 campaign, based upon his observation of her participation. Id. at 26. Plaintiff acknowledged that she worked at a phone bank at the mayor's campaign headquarters for one afternoon. Defs.' Ex. 3, Denman Dep. at 113-14. Plaintiff further testified that she did not know what Pitoniak or Riddle knew about her level of support, that no one commented to her on her level of support, that no one asked her to do something for the mayor's campaign that she refused to do, and that no one told her that the mayor made any comparison between her and anyone else regarding the level of support she offered the campaign. Id. at 118-19.

The former Personnel Director, Don Wood, testified that during the 2001 campaign Riddle engaged him in a "general discussion about those select few . . . folks in general who

weren't participating," including Plaintiff. Pl.'s Ex. 10, Wood Dep. at 30-31. Wood described the discussion as "just thinking aloud, 'How come these folks aren't participating? Is there something going on?' I don't feel comfortable speaking for somebody else, so the answer is I don't know." Id. at 31. Wood also testified that the "mayor was involved in those general conversations about getting the [union] folks out to support him. Him naming names, I can't recall that." Id. at 32. Wood himself worked on Pitoniak's re-election campaign, by passing out literature to residences, putting up campaign signs, and working on phone banks. Id. at 6-7. (Despite this, the mayor elected not to renew Wood's contract.)

Plaintiff claims that her dismissal was due to her political affiliation in violation of the First Amendment.[1] Defendants seek summary judgment, arguing that Plaintiff cannot demonstrate a causal connection between her termination and her alleged lackluster support of the mayor. Defendants further argue that Plaintiff was not entitled to First Amendment protection in her job in any event.

## LAW AND ANALYSIS

### I.   Summary Judgment Standard

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When reviewing a motion for summary judgment, the facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The party opposing summary

---

[1] Plaintiff abandoned her claim that her dismissal was also due to her husband's support of the mayor's opponent.

judgment, however, must present more than a "mere scintilla" of evidence; the evidence must be such that a reasonable jury could find in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

## II.     First Amendment Political Affiliation Claim

In order to establish a prima facie case that the mayor terminated her employment in violation of her First Amendment rights, Plaintiff must show that her political affiliation was a "substantial" or "motivating" factor behind her termination. Kreuzer v. Brown, 128 F.3d 359, 363 (6th Cir. 1997). If Plaintiff meets her burden, the burden then shifts to Defendants to prove that the mayor would have terminated Plaintiff even without considering her political activities. Id.

The mayor made the decision to terminate Plaintiff's employment, in consultation with Riddle. The mayor testified that it was his idea to discharge Plaintiff. Defs.' Ex. A at 42. Although there is evidence that Riddle expressed his concern about Plaintiff's level of support to Wood, there is no evidence that Riddle shared that concern with Pitoniak, the decision maker. Plaintiff admitted that she did not know what the mayor knew about her level of support, that she never refused to engage in campaign activities, and that she was not aware of the mayor comparing her to other employees.

Plaintiff raises other evidence of the mayor and Riddle's alleged willingness to retaliate against political opponents, but none of it has any relationship to her termination. See Pl.'s Br. at 3-4. Aside from that, Plaintiff seeks to make a causal connection between her discharge and her relative lack of support from the following: (1) she was discharged a couple of months after the November 2001 election; (2) she was replaced by a less qualified, ardent Pitoniak supporter;

and (3) Riddle expressed concern about her level of support to Wood. Plaintiff lacks evidence, however, that the mayor was concerned about her level of support. Although Plaintiff claims that it is "completely reasonable to assume that Plaintiff's lack of relative support for the Mayor would have been discussed by the Mayor and Riddle in relation to her discharge," such an unsupported assumption is not sufficient to withstand summary judgment. Wade v. Knoxville Utilities Bd., 259 F.3d 452, 463 (6th Cir. 2001) ("[C]onclusory allegations and [the plaintiff's] perceptions . . . are not sufficient to stave off summary judgment.").

Without evidence that the mayor knew about or was concerned about her lack of support, Plaintiff cannot demonstrate that her lack of support was a "substantial" or "motivating" factor in terminating her employment.[2] See Hall v. Tollett, 128 F.3d 418, 426-27 (6th Cir. 1997) (summary judgment appropriate where there was no evidence that the defendant knew of the plaintiffs' political affiliation).

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that Defendants' October 18, 2005 motion for summary judgment is GRANTED.

                              s/John Corbett O'Meara
                              John Corbett O'Meara
                              United States District Judge

Dated: December 20, 2005

---

[2] In light of this conclusion, the court will not reach the issue of whether Plaintiff's position was entitled to First Amendment protection.